CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUN 0 5 2007
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 7:06CR00079 |
| ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: Hon. Glen E. Conrad |
| LAWRENCE MCARTHUR WEBB, ) | United States District Judge |
| ) | |
| Defendant. ) | |

This case is presently before the court on the defendant's motion for a new trial and the defendant's motion for judgment of acquittal. For the following reasons, both motions will be denied.

### Background

The defendant, Lawrence McArthur Webb, was charged in a seventeen-count superceding indictment on January 11, 2007. Count One charged Webb with conspiring to distribute and possess with intent to distribute fifty grams or more of a mixture or substance containing cocaine base and five kilograms or more of a mixture or substance containing cocaine, in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(a) and 846. Counts Ten and Twelve charged Webb with distributing a measurable quantity of a mixture or substance containing cocaine on April 26, 2006 and May 10, 2006, respectively, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

On March 1, 2007, the defendant filed a motion to suppress a statement that he made to Agent William Cunningham on August 29, 2006, while he was incarcerated at the Roanoke City Jail. Following a hearing on March 9, 2007, the court denied the defendant's motion to suppress.

A jury trial was subsequently held on March 14 and 15, 2007. Prior to the beginning of trial, the defendant moved for a continuance based upon the unavailability of Jeff Richards, a character witness. Mr. Richards was unable to testify due the fact that he had to care for his ill wife. The court denied the motion, but permitted counsel to present a stipulation as to Mr. Richards' testimony. The defendant was ultimately convicted on all three counts.

On March 21, 2007, the defendant filed a motion for a new trial, claiming that the court erred by denying his motion for a continuance; that the Assistant United States Attorney referred to the defendant's proffer during his closing argument, in violation of a letter agreement dated September 18, 2006;[1] and that the court erred by denying the defendant's motion to suppress. The defendant also filed a motion for judgment of acquittal, claiming that the evidence was not sufficient to sustain a conviction on any of the three counts. A hearing on the motions was held on June 4, 2007.

## Discussion

I.  Motion for a New Trial

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The United States Court of Appeals for the Fourth Circuit has observed that a court "should exercise its discretion to grant a new trial sparingly, and that it should do so only when the

---

[1] At the time the agreement was signed, the defendant had expressed a desire to cooperate with the government in its investigation. The agreement indicated that the defendant would provide an oral proffer in order for the government to assess the value of his cooperation. The agreement further provided that nothing said during the proffer would be used against the defendant in any state or federal criminal prosecution.

2

evidence weighs heavily against the verdict." United States v. Perry, 335 F.3d 316, 320 (4th Cir. 2003) (internal quotations omitted).

### A. Denial of the motion for continuance

The defendant first argues that the denial of the motion for a continuance violated his Sixth Amendment right to effective assistance of counsel and his Fifth Amendment right to due process. In order to establish a violation of the Sixth Amendment right to effective assistance of counsel on the basis of the denial of a continuance, a defendant must demonstrate that the court "abused its discretion in denying the motion," and that "the denial specifically prejudiced the defendant's case." United States v. Larouche, 896 F.2d 815, 823 (4th Cir. 1990). If the denial of the continuance did not prejudice the defendant's case, there is no due process violation. See Id. ("The due process analysis, in this context, merges into the sixth amendment analysis; if the district court's wrongful denial of a continuance did not prejudice the defendant's ability to prepare, it cannot otherwise be said here that the court deprived the defendants of a fair trial.").

Applying these principles, the court concludes that the denial of the defendant's motion for a continuance did not violate his right to effective assistance of counsel or his right to due process. First, the defendant has failed to demonstrate that the court abused its discretion in denying the motion. The defendant did not formally request the continuance until the morning of trial, and there was no indication as to how long Mr. Richards' wife would need to recuperate. Moreover, the court permitted the defendant to present this character witness's testimony in the form of a stipulation, which included the reasons for the witness's unavailability, and the defendant has simply failed to demonstrate that he suffered any specific prejudice as a result of the court's decision.

3

B.  Alleged references to the defendant's proffered statement

The defendant next argues that the Assistant United States Attorney referred to the defendant's proffer during his closing argument, in violation of the September 18, 2006 letter agreement. The court has reviewed the transcript of the attorney's closing argument. The transcript reveals that the attorney did not mention the fact of the proffer during his closing argument, and the court is unable to determine that any specific elements of the proffer were improperly referenced. To the extent that the attorney may have referenced any information during his closing argument that was not a part of the government's case-in-chief, the court finds any such reference to be inconsequential.

To obtain a new trial based on remarks made by a prosecutor during closing argument, the defendant must demonstrate (1) that the prosecutor's remarks were, in fact, "improper," and (2) that the remarks "prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993) (internal citations omitted). In evaluating the issue of prejudice, the United States Court of Appeals has identified a number of relevant factors, including: (1) the degree to which the prosecutor's remarks misled the jury or prejudiced the defendant; (2) whether the remarks were isolated or extensive; (3) whether, absent the remarks, the strength of the other evidence was sufficient to convict the defendant; (4) whether the comments were deliberately made to divert the jury's attention to extraneous matters; and (5) whether curative instructions were given to the jury. Id. at 241; United States v. Wilson, 135 F.3d 291, 299 (4th Cir. 1998).

Considering these factors, the court finds that, even if the Assistant United States Attorney made any improper remarks during closing argument, the remarks did not "prejudicially

4

affect[] the defendant's substantial rights so as to deprive the defendant of a fair trial." Mitchell, 1 F.3d at 240. First, the attorney's closing argument did not mislead the jury or prejudice the defendant. As explained more fully with respect to the defendant's motion for judgment of acquittal, the government's evidence against the defendant was overwhelming. Additionally, any improper remarks, if made, were clearly isolated, and there is absolutely no indication that the Assistant United States Attorney intended to misstate the evidence or divert the jury's attention to extraneous matters. Finally, the jury was instructed on multiple occasions that the attorneys' closing arguments were not evidence, and that they were intended only to assist them in understanding the evidence and the parties' contentions. For these reasons, the defendant's motion for a mistrial on the basis of the Assistant United States Attorney's closing argument is without merit.

### C. The denial of the defendant's motion to suppress

The defendant also contends that he is entitled to a new trial because the court erred in denying his motion to suppress the statement that he made to Agent Cunningham on August 29, 2006. Specifically, the defendant again argues that "the conditions of his detention caused his statement to have been involuntarily obtained." The court held an evidentiary hearing on this issue on March 9, 2007. Based on the hearing testimony, the court ruled that the statement was voluntary. The court emphasized that the defendant clearly initiated contact with the government agent, and that although the defendant's living conditions at the jail may have been disagreeable and unpleasant, there was no evidence to support a determination that the defendant's statement was coerced, forced, or otherwise obtained by tactics that overbore the defendant's will. See Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973) (test for determining whether a statement

is voluntary under the Due Process Clause is whether the defendant's "will has been overborne" or "his capacity for self-determination critically impaired"); United States v. Cristobal, 293 F.3d 134, 140 (4th Cir. 2002) ("Coercive police activity is a necessary predicate to a finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment."). The defendant has offered no additional basis for disturbing the ruling on the motion to suppress, and the court finds no reason to do so. The totality of the circumstances surrounding the defendant's statement clearly indicate that the statement was voluntary. Accordingly, the court will deny the defendant's motion for a new trial.[2]

II. Motion for Judgment of Acquittal

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, the court may enter a judgment of acquittal after a jury has returned a verdict against a defendant. Fed. R. Crim. P. 29(a). However, this court must uphold the jury's verdict "if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). The United States Court of Appeals for the Fourth Circuit has defined "substantial evidence" as that which "a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Newsome, 322 F.3d 328, 333-334 (4th Cir. 2003) (internal citations omitted). In reviewing the sufficiency of the evidence, the court does not assess the credibility of witnesses

---

[2]The court notes that, at trial, the jury was specifically instructed that such statements or confessions must be considered with caution and great care, and that it was up to the jury to determine whether the defendant made the statement and, if so, how much weight to give to it. The jury was further instructed to consider all of the evidence surrounding the statement, including the circumstances under which the defendant may have made it.

6

and assumes that the jury resolved contradictions in testimony in the government's favor. United States v. Romer, 148 F.3d 359, 364 (4th Cir. 1998).

In this case, the defendant argues that there was insufficient evidence to sustain a conviction on any of the three counts. However, the court's review of the evidence presented at trial leads it to conclude that there was sufficient evidence to support the jury's verdict that the defendant conspired to distribute and possess with intent to distribute fifty grams or more of a mixture or substance containing cocaine base and/or five kilograms or more of a mixture or substance containing cocaine; that the defendant distributed a measurable quantity of a mixture or substance containing cocaine on April 26, 2006; and that the defendant distributed a measurable quantity of cocaine on May 10, 2006. The court bases its decision on the testimony of a number of witnesses, including Agent Cunningham, Shawnta Slade, Thomas Taylor, Joseph Quarles, and Agent John Dodson.

Agent Cunningham testified that Quarles was the original target of the investigation, and that Quarles was detained on April 14, 2006, following a controlled buy in Dublin, Virginia. Quarles agreed to cooperate with the drug investigation, and to make controlled buys from Taylor and the defendant. The defendant was subsequently arrested on August 25, 2006, following two controlled buys made by Quarles. After the defendant was arrested, the defendant was transported to Agent Cunningham's office. Although the defendant initially agreed to speak with Agent Cunningham, the agent ended the conversation because he believed that the defendant was not being truthful. The defendant subsequently appeared before a magistrate judge for his initial appearance and was later placed in solitary confinement at the Roanoke City Jail. On August 29, 2006, Agent Cunningham was advised that the defendant wished to speak with him. The agent

ultimately obtained a statement from the defendant, after he read the defendant his Miranda[3] rights. Specifically, the defendant admitted to being a trafficker of powder cocaine, and told Cunningham that he obtained one to two ounces of cocaine from Taylor every three weeks, that he used some of the cocaine and sold the rest, that he knew Taylor was a large-scale cocaine trafficker, that he personally observed Taylor in possession of kilogram-sized quantities of cocaine, and that Taylor obtained kilograms of cocaine from a black female from Greensboro, North Carolina. The defendant also told Agent Cunningham that he would "step on" or dilute the cocaine with inositol, a baby laxative, in order to increase the drug weight. When asked about the controlled buys that Quarles made from the defendant on April 26, 2006 and May 10, 2006, the defendant admitted that the buys were made, but claimed that he was simply delivering cocaine from Taylor.

Shawnta Slade testified that she began delivering two to three kilograms of cocaine to Thomas Taylor in 2000 or 2001, and that she made the trip once or twice a week. Slade testified that the relationship continued until she was indicted on federal drug charges in 2004 or 2005. When asked to provide a low estimate of the number of kilograms that she delivered to Taylor over the years, Slade testified that she delivered 125 to 150 kilograms.

Thomas Taylor testified that he had been involved in the drug trade for 20 years, that Slade became his sole supplier of cocaine in 2002 or 2003, and that he dealt with Slade for one to two years. Taylor testified that he obtained two to three kilograms per week from Slade during that time. Taylor also testified that the defendant, his cousin, and Quarles, a close family friend, were part of his regular customer base, with Quarles being a larger dealer. Taylor testified that

---

[3]Miranda v. Arizona, 384 U.S. 436 (1966).

8

he "fronted" Quarles "big eights" and half-kilograms of cocaine, and that he "fronted" the defendant a half-ounce to an ounce of cocaine, anywhere from once or twice a week to once a month. Taylor testified that Quarles made crack cocaine from the powder cocaine that he obtained from Taylor, and that it was not a secret that you could buy crack cocaine from Quarles. Taylor further testified that the defendant knew that Taylor was a kilogram-level dealer, that the defendant had seen him with kilograms of cocaine on a couple of occasions, and that the defendant had even accompanied him to Greensboro on one occasion when he purchased cocaine from Slade.

Joseph Quarles testified that he began obtaining cocaine from Taylor five to seven years ago, and that he sold cocaine in its powder form and as crack cocaine. Quarles explained that he would convert cocaine powder to crack cocaine by cooking the powder with baking soda. Quarles testified that Taylor "fronted" him "big eights" of cocaine, that he had seen the defendant obtain cocaine from Taylor, and that he also purchased cocaine from the defendant, sometimes two to three ounces at a time. Quarles testified that the defendant knew that he was converting the powder cocaine to crack, because he would ask the defendant whether the cocaine was good enough to "cook up."

Both Quarles and Agent Cunningham testified regarding the controlled buys that Quarles made from the defendant on April 26, 2006 and May 10, 2006. After speaking with the defendant via cell phone on April 18, 2006 and April 19, 2006, Quarles arranged to purchase cocaine from the defendant at Taylor's house on April 26, 2006. Quarles was driven to Taylor's house by government agents. Quarles returned to the agents' vehicle twenty to thirty minutes later and turned over the cocaine that he purchased. Quarles called the defendant's cell phone

9

again on May 10, 2006. In addition to requesting cocaine, Quarles asked the defendant for some baking soda, to verify that the defendant knew that Quarles was converting the cocaine to crack. The defendant delivered the requested cocaine and baking soda to Quarles outside the home of Quarles' mother.

Agent Dodson testified that he assisted with the search of the defendant's residence on August 25, 2006, following the defendant's arrest. Dodson testified that two sets of electronic scales were found during the search, as well as a bottle of inositol powder and two plastic bags containing a white, powdered substance. Subsequent chemical analyses revealed that the substance in the plastic bags was cocaine.

Based on the testimony at trial, and viewing the evidence in the light most favorable to the government, the court concludes that there was substantial evidence to support the jury's finding that the defendant conspired to distribute and possess with intent to distribute fifty grams or more of a mixture or substance containing cocaine base and/or five kilograms or more of a mixture or substance containing cocaine. Additionally, there was substantial evidence to support the jury's finding that the defendant distributed a measurable quantity of a mixture or substance containing cocaine on April 26, 2006 and May 10, 2006. Although the defendant argues that the government's case against him was primarily based on the testimony of coconspirators, and that the coconspirators' testimony was inherently unreliable, credibility determinations are exclusively within the purview of the jury. See United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994) (internal citations omitted) ("The jury, not the . . . court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretations to believe.").

Accordingly, the court will deny the defendant's motion for judgment of acquittal.

## Conclusion

For the reasons stated, the court will deny the defendant's motion for a new trial and his motion for judgment of acquittal. The Clerk is directed to send a certified copy of this order to all counsel of record.

ENTER: This 5th day of June, 2007.

/s/ Glen Conrad
United States District Judge